Note.—Reported in 204 N. W. 15.  See, Headnote (1), American Key-Numbered Digest, Statutes, Key-No. 251, 36 Cyc. 1194; (2) Statutes, Key-No. 251, 36 Cyc. 1193.

On conclusiveness of legislative declaration of emergency, see note in 7 A. L. R. 519.

---

PYNE, Respondent, v. RISAGER et al, Appellants.

(203 N. W. 994.)

(File No. 5316.  Opinion filed May 14, 1925.)

1. **Conspiracy—Monopolies—Extent of Burden on Plaintiff in Action for Conspiracy Stated.**

    In action for damages sustained by contracting plumber for defendant's conspiracy to injure his business, plaintiff had burden of showing that defendants unlawfully conspired to fix prices and control profits in business of contracting plumbers in his vicinity, and that, because of his refusal to enter into such agreement, defendants entered into a further conspiracy to injure plaintiff's business and circulated false reports concerning plaintiff, which resulted in substantial damage to plaintiff's business as a plumbing contractor.

2. **Monopolies—Evidence—Evidence Held Not to Show that Defendants Conspired to Fix Prices and Control Profits of Contracting Plumbers.**

    In action for damages sustained by contracting plumber for defendants' conspiracy to injure his business, evidence held not to show that defendants conspired to fix prices and to control profits of contracting plumbers.

3. **Appeal and Error—Verdict—Jury's Verdict Does Not Supply Evidence.**

    While jury's verdict for plaintiff resolves all questions on conflicting evidence in favor of plaintiff, it does not supply evidence.

4. **Monopolies—Evidence—Evidence Relating to Time Long Before Date of Alleged Conspiracy Held Inadmissible.**

    In action for damages sustained by contracting plumber for defendants' conspiracy to injure his business by fixing prices

and controlling profits, evidence as to alleged conspiracy which related to time long before date thereof, and long before any agreement to fix prices was alleged to have been discussed, was inadmissible.

5. Conspiracy—Evidence—Evidence Held Not to Show that Defendants Entered into a Further Conspiracy to Injure Plaintiff's Business and Business Standing.

Evidence held not to| show that, because plaintiff refused to enter into an agreement with defendants to fix prices and control profits in plumbing business, defendants entered into a further conspiracy to injure plaintiff's business and business standing.

6. Conspiracy—Burden of Proof—Burden on Plaintiff to Show that Defendants Made False Statements.

In action for damages sustained by contracting plumber for defendants' conspiracy to injure his business by representations that he was a "closed-shop" man, plaintiff had burden not only of proving that defendants made such statements but that they were false.

7. Appeal and Error—Trial—Evidence—Exclusion of Evidence that Plaintiff Had Signed a Closed-shop Agreement Held Error and Prejudicial.

In action for damages sustained by contracting plumber for defendants' conspiracy to injure his business, plaintiff having put in evidence an exhibit to show that contract which he entered into with unions was not a closed-shop agreement, exclusion of evidence that plaintiff had signed a closed-shop agreement held error and prejudicial as materially affecting necessity of granting defendants' motion for a directed verdict.

8. Conspiracy — Evidence — Plaintiff Did Not Sustain Burden of Showing Substantial Damage to His Business from Defendants' False Statement.

In action for damages sustained by contracting plumber for defendants' conspiracy to injure his business, plaintiff held not to have sustained burden of showing any substantial damage to his business from any false statements made by defendants.

Appeal from Circuit Court, Brown County; HON. B. A. WALTON, Judge.

Action by J. E. Pyne against Carl Risager and others. From a judgment for plaintiff, and an order denying a new trial, defendants appeal. Reversed, with directions.

*Williamson, Williamson & Smith,* and *Geo. H. Fletcher,* all of Aberdeen, for Appellants.

*Van Slyke & Agor* and *Harkin, Crane & Noll,* all of Aberdeen, for Respondent.

(8)  To point eight of the opinion, Appellant cited:  Rev. Code 1919, Secs. 1984, 5364; Vander Linden v. Oster, 27 S. D. 113, 156 N. W. 911; Youmans v. Hanna (N. D.), 160 N. W. 705; Howard v. Manuf. Co., 139 U. S. 199, 11 Sup. Ct. 500, 35 L. ed. 147; Trust Co. v. Clark, 92 Fed. 293, 296, 298, 34 C. C. A. 354, 357, 359; Simmer v. City of St. Paul, 23 Minn. 408; Griffin v. Colver, 16 N. Y. 489, 491; 69 Am. Dec. 718.

Respondent cited:  Evans v. Harries, 38 Eng. L. & Eq. 347.

MORIARTY, Circuit Judge.  The respondent, who was plaintiff in the trial court, brought this action to recover damages from the defendants jointly.  For his cause of action respondent alleged that, prior to the 1st day of March, 1920, he was engaged in the business of a contracting plumber in the city of Aberdeen, S. D., and had been so engaged for a period of four years prior to the commencement of this action.  And he alleged that his said business yielded him substantial profits.  He further says that the appellants, who were defendants in the trial court, during the aforesaid period were also engaged in business as contracting plumbers in the said city of Aberdeen.  And he alleges that about the 1st day of March, 1920, the appellants wrongfully and illegally conspired together to fix prices of all plumbing contracting work and material used therein in the city of Aberdeen and vicinity in such manner as to yield to such contracting plumbers a profit equal to 40 per cent of the contract price, and further agreed among themselves upon plans to suppress competitive bidding on jobs amounting to less than $1,000, and to control the matter of selecting the persons or firms who should have such jobs.  And he further alleges that the defendants requested him to become a party to such agreement and join in such agreement to fix prices and profits, and that he refused to join in said agreement or to be bound by any arrangements made in accordance therewith.  And he alleges that because of his refusal to join with them in the said agreement, and in furtherance of their aforesaid conspiracy, the appellants did further illegally conspire together to force respondent to join their agreement to fix prices and control profits, and, in event of his failure to do so, to destroy his business, cut

off his patronage, prevent his securing business in the city of Aberdeen and its vicinity, and to destroy his reputation and standing as a plumber in said community. And he says that in pursuance of said conspiracy the appellants procured and attempted to procure various jobbers and wholesalers not to sell him materials and equipment for the conducting of his business, attempted to impair his credit at the banks and elsewhere, circulated false and malicious stories concerning him to the effect that he was not a competent contracting plumber; that he employed unsuitable and incompetent help; that he was financially irresponsible; that he was a closed-shop man and worked with the unions and against the employing plumbers; that he attended the meetings of both union men and employers and betrayed the confidence of both; and that he had attended meetings of contracting plumbers and there learned what prices had been quoted for certain jobs, and had then gone out and underbid the others. And he says that all of those statements were false, and that because thereof he had been put to great expense and trouble in obtaining material and equipment necessary for his business, had been prevented from obtaining contracts on which he was the lowest responsible bidder and from obtaining a large amount of contracts, has suffered damage to his reputation as a contracting plumber, has been seriously damaged by said acts of appellants in the sum of $50,000. And he asked for judgment against the appellants in the sum of $50,000.

To these claims of the respondent the appellants answered, admitting that they and respondent were contracting plumbers as alleged by the respondent, but denying all other of respondent's allegations. And they say that during the years 1919 and 1920 the labor unions were attempting to make Aberdeen a closed-shop town and to exact extortionate and unreasonable wages in all lines of building industry; that under those conditions it was necessary for contractors to employ nonunion labor, that appellants, together with the respondent and other contracting plumbers, met and agreed to support the general contractors in resisting the demands of the unions. And they say that thereafter they, the appellants, fully complied with their agreements to resist unreasonable demands of union labor, but that respondent, after joining in these agreements with the other contracting plumbers, disregarding these agreements and in bad faith toward the other contracting plumb-

ers, entered into an agreement with the unions not to employ non-union labor, known as a closed-shop agreement, and allied himself with the labor unions in the contentions then existing in the city of Aberdeen. And appellants say that it was solely on account of these acts of respondent, and because of the disrepute which such acts incurred, that respondent's business and standing in the community were damaged and that he was prevented from securing contracts in said community, and the appellants deny that they ever entered into any conspiracy or agreement to fix prices or control profits as alleged in respondent's complaint. And they say that the only agreements that they at any time entered into, either among themselves or with any one else was the aforesaid agreement to resist unreasonable demands of union labor. And they deny that they circulated any false reports concerning respondent, either pursuant to a conspiracy or otherwise.

The case was tried upon the issues so joined. At the close of respondent's case the appellants moved the court to direct a verdict in their favor upon the grounds that the respondent had failed to produce evidence showing or tending to show that appellants had entered into any agreement to fix prices or control profits, or suppress competitive bidding for contracts or to control the parceling out of jobs, or that appellants had requested the respondent to join in any such agreement, or that they had conspired to force respondent to join in any such conspiracy to fix prices or control profits, and on the further ground that there was no evidence showing or tending to show that any acts of appellants had caused respondent to suffer any damage whatever.

This motion was denied by the trial court, and the case was submitted to the jury, which returned a verdict against appellants and in favor of respondent in the sum of $5,124. After appellants had presented a motion for judgment notwithstanding the verdict, and said motion had been denied, judgment was entered in accordance with the verdict, and from this judgment and an order denying a new trial this appeal was taken.

Appellants' counsel present by their assignments of error six different propositions for consideration by this court. Stated generally, the assignments of error and the propositions contended for by appellants deal with alleged errors in the admission and exclu-

sion of evidence, with the giving and refusing of instructions, and with the insufficiency of the evidence to support the verdict.

From the view which this court takes of the question of sufficiency of the evidence, it will not be necessary to consider the question of instructions nor the questions involving rulings on admissibility of evidence, except in so far as such rulings affect the question of the burden of proof which respondent was required to sustain in order to recover against the appellants.

[1] Upon analysis of the issues presented in this case, it is apparent that respondent had the burden of proving the following facts:

First, that the appellants entered into an unlawful conspiracy to fix prices and control profits in the business of contracting plumbers in Aberdeen and vicinity.

Second, that because of the refusal of respondent to enter into agreement with them in the matter of fixing prices and controlling profits, appellants entered into a further conspiracy to injure respondent's business and business standing, and that in pursuance of this latter conspiracy the appellants circulated the reports complained of.

Third, that the reports so circulated were false.

Fourth, that the acts of appellants in circulating false reports about respondent, and done pursuant to conspiracy among themselves, resulted in substantial damage to respondent's business as a plumbing contractor.

Unless respondent before resting his case has presented competent evidence showing or tending to show each of these items, it was error for the trial court to deny appellants' motion for a directed verdict.

As to whether there is proof of appellants having conspired to fix prices and control profits, the theory upon which the case was tried makes this conspiracy the basis upon which respondent's entire case must stand. Unless there was such conspiracy, there would be no secondary conspiracy to force respondent to join in it. Unless there were these two consecutive conspiracies, there could be no joint liability of the appellants for the alleged circulation of defamatory statements. Without proof of the original conspiracy alleged by respondent, neither of the appellants would be in any

way liable for statements made or reports circulated by any of the other appellants.

[2-4]   Coming, then, to the vital question whether there is any proof of the original conspiracy alleged, we find evidence that, at certain meetings of the master plumbers of Aberdeen, a certain publication intended to be used as a price guide for plumbers' supplies was discussed.   The evidence shows that two of the appellants had recently attended a state convention of master plumbers, and that they exhibited a copy of said publication to the meeting of Aberdeen plumbers and explained to the meeting the manner in which it was intended to·be used in quoting prices to prospective purchasers of·plumbing materials. This publication, Exhibit 1, is not materially different from the ordinary catalogue used by retailers, in which the usual retail price is quoted, with the understanding that the retail dealer is to have a discount therefrom. The most that can be claimed from the evidence is that two or more of the appellants favored the use of Exhibit 1 as a guide in securing uniformity of prices.   Respondent's own evidence shows that several of those in attendance at the meeting at which the matter was discussed stated both in the meeting and outside. it that they would not be parties to any agreement to use the price guide as it was recommended to be used.   It is evident that with many different firms and individuals engaged in the business in the city of Aberdeen there could be no conspiracy to fix prices or control profits made effective by the appellants, while several other firms and individuals engaged in the business refused to go into the combination.   Under such circumstances, the most that respondent can claim for his evidence is that the appellants indicated by their expressions that they were willing to become parties to some such agreement.   But to infer from the evidence that these men, after learning that the others would not be parties thereto, formed among themselves an agreement to add a certain percentage of profit to the prices which they would charge is equivalent to saying that they agreed to allow those outside the agreement to undersell them and to submit to allowing those others to have all the business. No such conditions can be reasonably inferred from any evidence submitted.   As to the conflict of evidence with reference to the statements made by the appellants, the verdict of the jury resolves all such questions in favor of respondent's contentions, but the

verdict does not supply evidence, and we hold that there is no evidence that appellants ever conspired to fix prices or control profits or parcel out jobs of plumbing as alleged by the respondent. The nearest any of respondent's evidence comes to showing acts out of the ordinary line of business and in apparent conformity with the alleged conspiracy is that of the witness, L. W. Kelly when he testified that in August, 1919, Dresselhuys spoke of appellant Jacobs going to the clinic to check up some of respondent's work, and appellant Risager said that should not be done. This related to a time long before the date of the alleged consipracy, and long before any agreement to fix prices is alleged to have been discussed. It is difficult to understand why the trial court allowed this evidence to stand after objection to the question and motion to strike the testimony was made by appellants. This evidence might be very prejudicial to the appellants, as it was allowed to go to the jury. On the other hand, it goes to show that conspiracy cannot be inferred from similar expressions of appellants made after the date of the alleged agreement of the appellants. In any event, it was not properly admitted and cannot be used as tending to show the conspiracy alleged.

[5] As to respondent's contention that appellants conspired to circulate reports derogatory to his reputation and standing, in order to force him to enter the agreement to fix prices and control profits, evidently if there was no such agreement there could be no secondary conspiracy to force him to enter it, and this court finds that there is no evidence to support a finding that there was any such original conspiracy, therefore there could be no secondary conspiracy to force him to enter the original conspiracy alleged. It may be conceded that one or more of the appellants did make remarks as to respondent's methods of doing business, and particularly as to his attitude on the question of union labor, but unless there is evidence to show a conspiracy, the respondent cannot recover in this action. He would have to rely on separate actions for slander against the individual appellants circulating slanderous reports, and his action against any one individual would not be aided by anything said by any of the others.

[6, 7] As to the allegation that the reports circulated by appellants were false, it will be noted that most of the testimony

as to what was said by appellants, or either of them, referred to what was said as to respondent's attitude toward union labor. In respondent's bill of particulars as to statements complained of and alleged to be false, he says that they stated that he was a closed-shop man. And the evidence as to discussions at the time of letting contract and at other times shows that it was this statement that had most consideration from the public. In their answer the appellants directly allege that the respondent, after agreeing with appellants and other plumbing contractors to assist the general contractors in resisting unreasonable demands of union labor, entered into an agreement with the labor unions to assist the unions in fighting the general contractors; and they further allege upon information and belief that at the time of such controversy and at about the time respondent alleges that appellants conspired against him, the respondent entered into a closed-shop agreement with the unions. These allegations of the answer joined issue squarely as to respondent's allegation that charges that he was a closed-shop man were false. His burden was, not only to show that appellants made such statements, but that the statements were false. On examining the record as to this point, we find that respondent introduced in evidence Exhibit 2, which is an agreement entered into between respondent and the local plumbers' and steam fitters' union. While the jury may not have been convinced that this exhibit was a closed-shop agreement, it certainly comes very near it. Respondent put this exhibit in evidence for the undoubted purpose of showing that the contract which he entered into with the unions was not a closed-shop agreement. Even if it be conceded that Exhibit 2 shows that respondent entered into a contract with the unions which was not a closed-shop agreement, that should not preclude appellants from showing that respondent entered into another agreement which was a closed-shop agreement. In attempting to do this, appellants introduced Exhibit 9, and sought to prove by a member of the local plumbers' union that respondent had signed Exhibit 9. This exhibit is undoubtedly a closed-shop agreement ,and, although the issue of whether respondent was a closed-shop man was squarely before the court, the court sustained an objection to the question whether respondent has signed this agreement; the objection being that it was wholly immaterial and not within the issues, and not any defense in this

action. This ruling was error on the part of the trial court. Under ordinary circumstances this error would only be ground for granting a new trial. But, under the peculiar circumstances existing at the time appellants moved for the direction of a verdict, this evidence materially affects the question of the necessity of granting such motion. This will be more fully discussed in the next paragraph, wherein we deal with the question whether respondent proved that he had suffered any substantial damages from the alleged acts of appellants.

[8] As to the respondent's failure to prove substantial damages on account of any reports circulated or statements made by appellants, an examination of the record will show that respondent's witnesses, who were representatives of jobbers or wholesalers, each and every one, testified that he continued to sell to respondent after hearing these reports, just as before. As to the individuals who had patronized respondent before hearing these stories, they testified that they continued to patronize him afterward. As to the lettings of contracts to do work for the public schools, the evidence shows that the principal question considered by the board and discussed by the members of the board was that of respondent's attitude toward union labor. No board member testified that statements made by either of the appellants had any influence in determining his or her action in letting the contracts. It was shown that in the case of one school contract the respondent by changing his bid, after the bids were opened, taking an amount from his heating bid and adding it to his plumbing bid, made himself low bidder on both; that the board at first awarded him the contract, but after consideration decided that it was not proper to allow bids to be jockeyed in that way, and readvertised for bids. This action was certainly within the discretion of the board, and requires no act of conspirators to explain or excuse it.

The only proof respondent presented to show damage from the alleged malicious acts of the appellants was evidence that the volume of his business in 1919 was greater than in 1920, or 1921, and that the total volume of business in 1920 and 1921 in Aberdeen and vicinity was greater than in 1919. With numerous statements in the record that the respondent's attitude toward union labor was considered by those controlling the letting of plumbing contracts in 1920 and 1921, and respondent not only failing to offer any

competent proof of the falsity of appellant's statements that he was a closed shop man, but, resisting all efforts of appellants to show whether he was in fact a closed-shop man, there is nothing to show that any falling off in his business was not due to a general knowledge and general resentment of his attitude toward the question of union and nonunion labor. Appellants were not guarantors of the maintenance of respondent's volume of business. Respondent did not sustain the burden of showing any substantial damage to his business from any false statements made by appellants and, in the absence of such proof, the trial court should have granted appellants' motion for the direction of a verdict in their favor.

The judgment and order appealed from are reversed, and the trial court is directed to enter judgment in favor of appellants.

MORIARTY, Circuit Judge, sitting in lieu of CAMPBELL, J., disqualified.